GARR et al. v. COLLINS et al.

No. 35403.   Feb. 17, 1953.

*253 P. 2d 838.*

Cheek, Cheek & Cheek and Ray Teague, Oklahoma City, for petitioners.

Wallace Hatcher, Pauls Valley, and Mac Q. Williamson, Atty. Gen., for respondents.

WELCH, J. Respondent in his claim for compensation states that on September 23, 1951, while in the employ of petitioner J. W. Garr, he sustained an injury to his right hand consisting of the loss of his first and second fingers, and injury to a third finger of the hand; that the injury occurred while he was engaged in starting an air compressor for the purpose of putting air in the tire of a tractor belonging to the petitioner J. W. Garr; that he was at that time employed as a ranch and farm laborer.

The trial commissioner, in substance, found that on Sunday September 23, 1951, respondent, while in the employ of petitioner, sustained an accidental personal injury to his right hand when he caught the first and second fingers of the right hand in the V-belt of an air compressor, and that as a result of said accidental injury he suffered the amputation of the distal phalanx of the first and second fingers of the hand, and as a result of such injury he was temporarily totally disabled for a period of six weeks and four days and would be entitled to compensation for such disability in the sum of $166.68 if any compensation were due, and in addition thereto he sustained a 20 per cent permanent partial disability to the right hand which would entitle him to compensation for such disability in the sum of $1,000, if any compensation were

due. He also further found that at the time claimant sustained his accidental injury he was in the act of starting an air compressor to put air in the tire of his personal automobile and was therefore not acting within the scope of his employment for his master's interest, and was not entitled to compensation. He also found that petitioner carried Workmen's Compensation insurance for his employees, having a combined liability and Workmen's Compensation policy which policy covered respondent, Lee Collins, and that petitioner and his insurance carrier are therefore estopped to deny that the occupation in which claimant was engaged was hazardous within the meaning of the Workmen's Compensation Law, and upon such findings entered an award denying compensation. The commission sitting as a whole on appeal modified the award and by such modified award made its own independent findings of fact and conclusions of law. It found that on the 23rd day of September, 1951, respondent, while in the employ of petitioner, sustained an accidental personal injury consisting of the amputation of the distal phalanx of the first and second fingers of his right hand, and as a result of such injury he was temporarily totally disabled for a period of six weeks and four days for which he was entitled to compensation in the sum of $166.68; that in addition thereto he sustained a 35 per cent permanent partial disability to his right hand for which he was entitled to compensation in the sum of $1,750, and further found that at the time respondent sustained his accidental personal injury he was acting within the scope of his employment for petitioner J. W. Garr and entered an award awarding respondent compensation accordingly. In all other respects the findings of the trial commissioner were sustained.

Petitioners bring the case here for review and seek to vacate the award on the ground that the respondent was not engaged in a hazardous employment at the time he sustained his injury, and in the alternative that the injury sustained by him did not arise out of and in the course of his employment.

The evidence shows that prior to and at the time he sustained his injury respondent was employed by petitioner J. W. Garr as a ranch and farm laborer. It is conceded by respondent that such employment is not an employment defined as hazardous by the Workmen's Compensation Law. It is stipulated that petitioner carried compensation insurance for his employees and that the policy covered respondent and was in force at the time he sustained his injury, and that his salary was used in fixing and collecting the premium paid on the policy. Respondent refers to 85 O.S. 1951 §§65.2 and 65.3, and asserts that under sec. 65.2, by reason of the fact that the petitioner had obtained compensation insurance for his employees under conditions stated in the stipulation, he is now estopped to deny that respondent was engaged in a hazardous employment at the time he sustained his injury. It is contended by petitioners that said section of the statute is unconstitutional. This contention cannot be sustained. We have many times held to the contrary. National Bank of Tulsa Bldg. et al. v. Goldsmith, 204 Okla. 45, 226 P. 2d 916; Veazey Drug Co. et al. v. Collins, 204 Okla. 238, 228 P. 2d 1015; Garr v. Cameron, 207 Okla. 553, 251 P. 2d 181, and several other cases. It is not disputed by petitioners that respondent sustained an accidental injury at the time and in the manner as claimed by him in his claim for compensation, nor is it disputed that as a result thereof he suffered the disability as found by the commission. They, however, contend that the injury sustained by him did not arise out of and in the course of his employment. This contention requires a review of the evidence.

Respondent, in substance, testified: On Sunday morning of September 23, 1951, he sustained an injury as stated in his claim for compensation. He was not required to work on Sunday except when directed to do so by petitioner

Garr's foreman. On the Sunday morning he sustained his injury he was directed by the foreman to help him start a truck which was being used on the ranch. The foreman intended to use the truck that day to take employees of petitioner Garr to town to get groceries. It was the custom of said petitioner so to do every Sunday. It was necessary to use a tractor to pull the truck to get it started. Respondent mounted the tractor to start it when he discovered that one of the tires on the tractor was down. The foreman then got the hose and attempted to place air in the tire. It was then discovered that there was not sufficient air in the air compressor to completely air up the tire. The foreman stated that there was enough air in the tire to pull the truck in order to get it started. Respondent then started the truck by pulling it with the tractor and at that time told the foreman that he would drive the tractor back to the garage and finish airing the tire to which the foreman made no reply or objection. He then drove the tractor into the garage and next to the air compressor. He then noticed one of the tires of his own car was low. He moved his car close to the compressor. He testified it was his intention after he finished airing up the tire on the tractor to also place air in the tire of his own car. When he started the compressor he reached over to get the hose which was lying on the compressor; when he did so his right hand was caught causing the first and second fingers to be amputated back of the distal joint, and also causing an injury to the third finger of the hand.

The foreman, in substance, testified that it was his custom each Sunday morning to take the employees of the ranch to town to get groceries, and on that morning he was having difficulty in starting the truck. He does not remember whether he asked respondent to help him start the truck or not. Respondent did, however, help him start the truck and helped him put air in the tire. After they had started the truck he drove the truck away and inquired of respondent what he intended to do. He replied he intended to move the tractor back into the garage and place some air in the tire of his own car. He also testified that respondent was a good employee. He did not check on his work, whatever there was to do he just went ahead and did it. He further testified that respondent was instructed by him as well as by his employer Garr that any time he discovered the tires on the truck or the tractor were low to air them up.

We think the evidence taken as a whole is sufficient to sustain the finding of the commission that the injury sustained by respondent arose out of and in the course of his employment.

Petitioners, however, urge that respondent sustained his injury on Sunday; that he was not required to do general farm or ranch work on Sunday. He was only required to do such work as he was ordered to do on such days; that on the Sunday morning respondent sustained his injury he was directed only to assist the foreman in starting the truck; that when the truck was started his work for that day ceased; that respondent was not directed by him to thereafter finish airing up the tire of the tractor and in doing so he was not acting within the scope of his employment and is therefore not entitled to recover compensation.

We think, however, the commission was justified in making its finding and award on the evidence of respondent alone. He testified that after the truck was started he told the foreman he intended to move the tractor back in the garage and finish airing up the tire. The foreman made no objection thereto, but remained silent and we think that by such silence he in effect acquiesced and consented to respondent placing additional air in the tire of the tractor and that such act and conduct was in itself sufficient to confer authority upon him so to do.

The relation of employer and employee under the Workmen's Compen-

sation Law may arise by implied contract, such as by knowledge and acquiescence of the employer in the service performed by the employee. Barnsdall Ref. Co. v. State Industrial Commission, 163 Okla. 154, 21 P. 2d 749; Campbell Oil Co. v. Elledge, 177 Okla. 601, 61 P. 2d 223. The commission, however, was not confined to this evidence alone in making its findings. It had before it in addition to such evidence the evidence of the foreman relative to the general instructions given by him and Mr. Garr to the effect that at any time he discovered the air in the tires of the tractor to be low to air them up. Respondent was directed by the foreman to drive the tractor on the Sunday morning he sustained his injury. He at that time discovered that the air in the tire of the tractor was low. He was therefore authorized under the general instructions given him to put sufficient air in the tire. He did not cease to be acting within the scope of his employment when he attempted to place additional air in the tire of the tractor belonging to his employer simply because he intended after having completed that task to use the air compressor to place air in the tire of his own private car.

The evidence is sufficient to support the conclusion that the injury sustained by respondent arose out of and in the course of his employment.

Award sustained.

HALLEY, C.J., JOHNSON, V.C.J., and CORN, DAVISON, WILLIAMS, and BLACKBIRD, J., concur. O'NEAL, J., dissents.